**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING**

**TECNOCAP, LLC,**

        Plaintiff/Counter Defendant,

**v.**                                                                  **Civil Action No. 5:18-CV-156**
                                                                        **(BAILEY)**

**UNITED STEEL PAPER AND FORESTRY,**
**RUBBER, MANUFACTURING, ENERGY,**
**ALLIED INDUSTRIAL AND SERVICE WORKERS**
**INTERNATIONAL UNION, AFL-CIO,**
**CLC LOCAL UNION NO. 152M,**

        Defendant/Counter Claimant.

AND

**UNITED STEEL PAPER AND FORESTRY,**
**RUBBER, MANUFACTURING, ENERGY,**
**ALLIED INDUSTRIAL AND SERVICE WORKERS**
**INTERNATIONAL UNION, AFL-CIO,**
**CLC,**

        Plaintiff,

**v.**                                                                  **Civil Action No. 5:18-CV-184**
                                                                        **(BAILEY)**

**TECNOCAP, LLC,**

        Defendant.

## <u>ORDER</u>

On this day, the above-styled matter came before this Court for consideration of

plaintiff/counter-defendant Tecnocap, LLC's Motion for Summary Judgment [Doc. 16[1]] and

---

[1]    The docket numbers refer to the filings docketed under 5:18-cv-156.

the joint motion of defendant/counter-claimant United Steel Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC Local Union No. 152M's ("Local") and plaintiff United Steel Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO's ("International") Motion for Summary Judgment [Doc. 14]. This matter has been briefed, and the Motions are now ripe for disposition.  For the reasons stated herein, defendant/counter-claimant Local and plaintiff International's Motion for Summary Judgment [Doc. 14] is granted, and plaintiff Tecnocap, LLC's Motion for Summary Judgment [Doc. 16] is denied.

## BACKGROUND

Local and International (collectively, the "Unions") and Tecnocap are parties to a collective bargaining agreement ("CBA") [Doc. 1-1].  Article 27 of the CBA provides for a three-step grievance and dispute resolution process wherein "[if] a representative of the Company fails to give his answer within the time limits specified in any step of the grievance procedure, the grievance may be processed to the next step" [*Id.* at 34–35]. Article 28 of the CBA states that if a grievance is not settled in the three-step grievance process, grievances can be moved to arbitration [*Id.* at 35–36].  If the grievance is moved to arbitration, the Arbitrator does not have the "power to add to, subtract from, or modify the terms" of the CBA [*Id.* at 36].

Tecnocap has a no fault attendance policy where employees accumulate points for unexcused absences from work [Doc. 1-2].  Six (6) points triggers a verbal warning, seven (7) points triggers a written warning, eight (8) points triggers a three day suspension

without pay, and nine (9) points triggers a suspension pending discharge [*Id*.].   The termination of Sam Hall on April 5, 2016, for a violation of the Employer's Attendance Control Program gave rise to the instant grievance [Doc. 1-12].   Because Hall failed to return paperwork to cover his absence under the Family and Medical Leave Act ("FMLA") and reached nine (9) points pursuant to the no fault attendance policy, Tecnocap terminated him [Doc. 1 at ¶¶ 8-9].

The heart of the arbitration dealt with the fifteen (15) day time limit requirement for the return of the Certification of Health Care Provider form and the consequences for not returning the paperwork timely [Doc. 1-13].   Hall's absence on March 4, 2016, was subsequently unexcused due to his FMLA request being denied because it was not submitted within the required fifteen (15) days as set forth within the Request for Medical Leave Form [*Id*. at 8].   Darrick Doty, the Human Resources Director at Tecnocap, testified that before sending the letter informing Hall he was suspended without pay for three working days, he checked with Kristie Kamerer, the FMLA Manager, and his office to see if the paperwork had been turned in [*Id*.].   Not until Doty was informed Hall had not turned the paperwork in or requested an extension, did Doty send the letter [*Id*.].

In a meeting between Doty and Hall, Doty testified that Hall had explained to him that it was the doctor's fault the paperwork was late [*Id*. at 9].   Following the meeting, Hall brought back a letter from his doctor, Dr. Mason, corroborating Hall's statement that the delay in getting the paperwork back was not Hall's fault [*Id*.].   Doty stated that even though he received the letter from Dr. Mason, he still terminated Hall because his absence was unexcused due to the denial of the FMLA claim [*Id*.].

Unions asserted that employees of Tecnocap had not been informed of their FMLA rights or the consequences of not complying with specific regulations [*Id.* at 13]. Hall, the Union President, and the Union Vice-President all testified that no one at Tecnocap ever informed them of the consequences of not turning the paperwork in on time [*Id.*]. The Union President and Hall claimed to not have been aware of the fifteen (15) day requirement in regard to turning in the paperwork, even though both had signed and dated page 2 of the Request for Medical Leave Form multiple times [*Id.* at 14]. Page 2 of the Form clearly sets the fifteen (15) day requirement as follows:

> MEDICAL LEAVE: Employees requesting leave due to their own personal illness will need to have a Certification of Health Care Provider form and a Medical Examination Report submitted to the HEALTH PLAN EMPLOYER SERVICES within 15 days after this request for leave.

[*Id.* at 14]. Hall's signature is right below the above statement [*Id.*].

The Arbitrator's award reasoned that even though the employees, including Hall, were aware of the fifteen (15) day requirement, Tecnocap failed to meet its obligation under the FMLA to advise the employees of all their rights and responsibilities, as well as any consequences for not turning the paperwork in on time [*Id.* at 15]. The Arbitrator stated that the FMLA requires that an employer "[p]rovide employees with a written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations" [*Id.* at 16]. The Arbitrator found no evidence that the employees had been informed of the consequences of their failure to not timely turn in the FMLA paperwork [*Id.*].

4

The Arbitrator stated that if Hall was made aware of the consequences of late paperwork, he would have made diligent efforts to get the paperwork returned timely [*Id.* at 18]. Forms in the past had been filed untimely without any consequence so the Arbitrator held Hall was not aware that his FMLA claim would be denied [*Id.*]. The Arbitrator also relied on the testimony of Hall and Jennie Hoyt, an employee in Hall's doctor's office [*Id.* at 7]. Jennie Hoyt testified that Hall dropped off the FMLA paperwork on March 7, 2016, and picked it up on March 28, 2016 [*Id.*]. She further testified that Hall called the office at least twice, came into the office once trying to retrieve the paperwork, and had his daughter ask about the paperwork when she came in for an appointment [*Id.*]. Thus, the Arbitrator found that Hall would have taken greater care to ensure the paperwork was timely turned in if he was informed of the consequences of turing the paperwork in late [*Id.* at 18].

The Arbitrator awarded five remedies: (1) Hall be reinstated, with eight (8) points on his attendance record; (2) the eight (8) points will have an effective date commensurate with the date of reinstatement for the purposes of the rolling 12-month period; (3) Hall will receive compensation only for wages and benefits lost from the date he was terminated to the date he is reinstated; (4) Hall must submit verifiable records of any and all income and benefits he received from April 5, 2016 to the date of his reinstatement; and (5) Hall will not receive any medical benefits from Tecnocap [*Id.*]

## LEGAL STANDARD

Rule 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. A motion for summary judgment should be denied "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 381 F.2d 245 (4th Cir. 1967); *see also Anderson*, 477 U.S. at 253 (noting that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

When cross-motions for summary judgment are before a district court, as here, the same standards of review are applied. *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n. 3 (4th Cir. 1983). Each motion must be considered individually on its own merits, and the facts relevant to each must be viewed in the light most favorable to the non-movant. *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). When considering each individual motion, the court must take care to "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing that motion. *Rossignol*, 316 F.3d at 523

(quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

## APPLICABLE LAW

This Court, in a recent decision, explained the standard to be applied when reviewing an arbitration award:

> Judicial review of arbitration awards is "among the narrowest known to the law." *PPG Indus. Inc. v. Int'l Chemical Workers Union Council of United Food and Comm'l Workers*, 587 F.3d 648, 652 (4th Cir. 2009) (internal citations omitted).   Arbitration awards are presumptively valid. *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996).   This is because the parties to a CBA "bargained for the arbitrator's interpretation and resolution of their dispute." *Id.* Consequently, courts generally defer to the arbitrator's reasoning and should not overturn their factual findings unless there has been fraud by the parties or dishonesty by the arbitrator.  *Id.*  Indeed, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *PPG Indus.*, 587 F.3d at 652 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)).
>
> Nevertheless, courts should overturn arbitration awards when the "award violates well-settled and prevailing public policy, fails to draw its essence from the collective bargaining agreement or reflects the arbitrator's

own notions of right and wrong." *Mountaineer*, 76 F.3d at 608 (citing *Misco*, 484 U.S. at 38, 108 S.Ct. 364). Thus, an "arbitrator cannot 'ignore the plain language of the contract' to impose his 'own notions of industrial justice.'" *PPG Indus.*, 587 F.3d at 652 (quoting *Misco*, 484 U.S. at 38, 108 S.Ct. 364).

Moreover, when construing the contract, "the arbitrator must take into account any existing common law of the particular plant or industry, for it is an integral part of the contract." *Clinchfield Coal Co. v. District 28, United Mine Workers of America & Local Union No. 1452*, 720 F.2d 1365, 1368 (4th Cir. 1983) (quoting *Norfolk Shipbuilding and Drydock Corp. v. Local No. 684 of the Int'l Brotherhood of Boilermakers*, 671 F.2d 797, 800 (4th Cir. 1982)). Finally, "[t]he 'basic objective' of a reviewing court in the arbitration context is 'to ensure that commercial arbitration agreements, like other contracts, are enforced according to their terms, and according to the intentions of the parties.'" *PPG Indus.*, 587 F.3d at 654 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

*Int'l Union, United Mine Workers of Am. v. Monongalia Cty. Coal Co.*, 240 F.Supp.3d 466, 471–72 (N.D. W.Va. 2017) (Keeley, J.).

## DISCUSSION

It is clear that Tecnocap has a very high burden to prove that it deserves relief in the form of overturning the arbitration award. Following the arbitration, both parties filed a Motion for Summary Judgment [Docs. 15, 17]. Initially, Tecnocap found procedural fault

8

with the fact this case was even arbitrable, as well as with the actual decision. However, in its Response, Tecnocap conceded the procedural argument and is solely arguing against the substance of the award [Doc. 19]. Tecnocap argues that the Arbitrator "failed to abide by the terms of the [CBA], issued a decision that does not draw its essence from the agreement, and instituted her own brand of industrial justice" [*Id.*].

The Union contends that the Arbitrator did not subtract from or modify the terms of the CBA; did not exceed her authority by refusing to abide by the Attendance Control Policy; and, did not implement her own brand of industrial justice [Doc. 15].

Arbitration must be final to be effective. *Westvaco Corp. v. United Paperworkers Inter. Union, AFL-CIO ex rel. Loc. Union 676*, 171 F.3d 971, 974 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R.R. v. Transportation Communications Int'l Union*, 973 F.2d 276, 278 (4th Cir. 1992)). Where arbitration is an option for parties,

[courts] will not substitute [their] judgment for that of the arbitrator. Unless the arbitrator's decision reflects his personal notions of right and wrong, or unless the arbitrator appears utterly to have failed to execute his duty to interpret the contract or the relevant law, the arbitrator's decision must stand.

*Upshur Coals Corp. v. United Mine Workers of America, Dist. 31*, 933 F.2d 225, 231 (4th Cir. 1991). For the reasons stated below, the Arbitrator did not fail her duty to interpret the Attendance Control Policy and the Arbitrator's decision will stand.

Tecnocap argues that "the Arbitrator rewrote the rules and created an exception to the 15 day rule and consequently an exception to the no fault policy" [Doc. 17]. The Arbitrator took note of the fifteen (15) day policy as it was written, but ultimately found that

9

Tecnocap failed to properly inform the employees of the consequences of not submitting the FMLA paperwork on time. The Arbitrator found that the Attendance Control Policy calls for termination after an employee receives nine (9) points and that Hall had eight (8) points prior to March 4, 2018, when he received his ninth (9) point for failing to timely turn in his FMLA paperwork.

The Arbitrator not only relied on Hall's testimony that he had never been informed of the consequences of untimely filed paperwork, but also relied on other witnesses' corroborating testimony that they were also not informed of the consequences. The Union President was asked during arbitration by Pete Jacks, the Executive Officer for the Union, if she had pointed out to Tecnocap that Tecnocap had a responsibility under the FMLA to "[p]rovide employees with a written notice detailing . . . and explaining any consequences" of not submitting the paperwork in on time. The Union President testified that she did point out to Tecnocap of this responsibility to inform employees and that she "felt that a lot of . . . people in the plant don't understand the serious nature . . . of not getting their paperwork in on time, that they could literally lose their job if they didn't get it in on time" [Doc. 1-13 at 11]. The Arbitrator also found that Hall was given FMLA paperwork on several occasions between June 2014 and March 2015, and that—even though the documentation had not been timely filed—was approved for FMLA excused absences [Doc. 1-13 at 15].

Because the Arbitrator found that Hall never faced consequences when he previously was late in filing the FMLA paperwork, this Court finds no reversible error in the Arbitrator's award of reinstating Hall. *See M&G Polymers USA, LLC v. Tackett*, 135 S.Ct. 926, 938 (2015) (when a court is construing a CBA, a court "must examine the entire agreement in light of relevant industry-specific 'customs, practices, usages, and

10

terminology'") (citation omitted).

Tecnocap's Motion for Summary Judgment also makes a conclusory statement that the Arbitrator's award was based on her own bias, but Tecnocap provides no specific examples of the Arbitrator's bias. This and the other arguments such as the Arbitrator "ignored all evidence and imposed her own will"; "instituted her own brand of industrial justice"; and that she added, subtracted from, or modified the terms of the CBA are not persuasive because the Arbitrator made her reasoning clear in her award. It is enough just that the Arbitrator is "even arguably construing or applying the contract." Therefore, the Arbitrator's stated reasoning is easily sufficient to withstand a challenge to the award even if a party or even if this Court disagreed.

It is clear from the Arbitration Award that the Arbitrator does not ignore the language of the Attendance Control Policy. She applied the policy and emphasized the lack of adequate notice of the consequences of untimely filed FMLA paperwork [Doc. 1-13 at 12–13]. Thus, because the Arbitrator is "applying the contract" within the scope of her authority, this Court does not find the Arbitrator implemented her own brand of industrial justice. Additionally, because there is no evidence of fraud by the parties or dishonesty by the Arbitrator, this Court will defer to the Arbitrator's reasoning and grant the Union's Motion to Enforce the Arbitration Award. In short, the burden to overturn an arbitration award is extremely high and Tecnocap has not presented evidence that can come close to meeting that burden.

## CONCLUSION

Based on the foregoing, Local and International's Joint Motion for Summary Judgment **[Doc. 14]** is **GRANTED**. Further, Tecnocap's Motion for Summary Judgment

11

**[Doc. 16]** is **DENIED**.   Accordingly, this Court **ORDERS** the Arbitration Award be **ENFORCED**.   Also, Tecnocap's Motion to Dismiss Defendant's Complaint Filed in 5:18-CV-184 **[Doc. 9]** is **DENIED AS MOOT**.   As a final matter, this consolidated action is **ORDERED STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: February *13*, 2019.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE